**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| **CHARLES EDWARD COLLINS** | § | |
| *Plaintiff,* | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. ____** |
| | § | |
| **CHARLES "CHASE" DOTSON,** | § | |
| *Defendant.* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

Now Comes, Plaintiff, Charles Edward Collins, and files this action against Defendant, Charles "Chase" Dotson, for damages pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution.

Plaintiff herein complies with the pleading requirements of FRCP Rule 8(a)(2) and the requirements of *Ashcroft v. Iqbal*, 556 U.S. 129 S. Ct. 1937, 1949 (2009) that "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Defendant Dotson, under no threat to himself, violated Plaintiff Collins' Fourth and Fourteenth Amendment Right to be free from excessive force.

## I.

## INTRODUCTION

This is an action for monetary damages brought pursuant to 42 U.S.C. §§1983 and 1988, and the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, and against Charles "Chase" Dotson.

## II.

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this lawsuit because the action arises under Title 28 U.S.C. §1331 (federal question) and 28 U.S.C. §1343(3) (civil rights) and statutory provisions as hereinafter more fully appear.  This court also has supplemental jurisdiction pursuant to 28 U.S.C. §1367 to hear the state claims that will be set forth in this complaint because they arise out of the same controversy.  Venue is appropriate in the United States District Court for the Eastern District of Texas, Marshall Division under 28 U.S.C. §1391(b), as this is the judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

## III.

## PARTIES

2.      Plaintiff, Charles Edward Collins is a resident of Harrison County, Texas.

3.      Defendant, Charles "Chase" Dotson, (hereinafter "Defendant Dotson") was at all times material to this suit, a law enforcement officer for the Harrison County Sheriff's Office. Each of the acts complained of herein arises from the conduct of this Defendant while acting under color of law, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of Texas and/or the County of Harrison, Texas.  Defendant Dotson is sued in his individual capacity.  He may be served with personal process by serving him at 1109 FM 2983, Marshall, Texas 75672-4432, or wherever he may be found.

## IV.

## FACTS

4.      On or about November 22, 2018, Charles Collins was at his residence located near Waskom, Texas.  Mr. Collins had become irritated and broke a rear sliding door and some

small belongings in the residence.  Mr. Collins then proceeded to go to sleep.  Shortly thereafter, Mr. Collins' girlfriend's daughter arrived at the residence and saw the damage in the living room area.  Unsure of what had occurred, she called law enforcement for assistance.  She then made contact with her mother, Mr. Collins' girlfriend, who told her that law enforcement assistance was not necessary.  Nonetheless, out of an abundance of caution, several Harrison County Sheriff deputies arrived on the scene.  By this time, Mr. Collins' girlfriend had also arrived on the scene.

5.      The deputies got Mr. Collins out of bed and interviewed him about what had occurred.  He explained what had happened and told the deputies that he was not leaving the residence the remainder of the night and would tend to the damage the next day.  The deputies separately interviewed Mr. Collins' girlfriend for an extended period of time.  She told them that she would stay with her daughter for the remainder of the night and return to the residence the next morning.  The deputies stayed for well over an hour.  At no point in time has there ever been any allegation of any type of domestic abuse between Mr. Collins and his girlfriend.

6.      Defendant Dotson ultimately informed Mr. Collins and his girlfriend that he was going to arrest Mr. Collins so that he could "sleep it off" and that his girlfriend could bond him out the next day and pay a small fine.  Mr. Collins' girlfriend pressed one of the other deputies as to what the charges were and he was unable to answer her.  Rather, he stated he would have to go ask Deputy Dotson.  Mr. Collins was cuffed behind his back and placed into the back of Dotson's patrol vehicle.

7.      Deputy Dotson drove at a high rate of speed, in excess of 100 mph, to the Harrison County jail annex.  Upon arrival at the annex, the assisting deputies as well as a jailer were waiting for Collins' arrival at the sally port with a wheelchair.  Mr. Collins cooperated with

their commands and exited the vehicle and sat in the awaiting wheelchair.  Mr. Collins' legs were strapped to the leg braces of the wheelchair.

8.     At this point Deputy Dotson began to repeatedly and violently strike Mr. Collins about the face and upper body.  This was done without any threat to the safety or welfare of any of the attending law enforcement personnel.  To be clear, Mr. Collins was restrained by handcuffs behind his back, was placed in a wheelchair, and his legs were strapped to the wheelchair prior to the beating taking place.  Blood immediately began to pour down Mr. Collins face.  Based upon information and belief, all of this was captured on surveillance video.

9.     Once booked into the jail, Mr. Collins requested to be transported to the local hospital as he feared he might die due to his injuries and the fact that he was taking prescription blood thinners.  Finally, after repeated requests, jail staff transported him to Christus GSMC Marshall for evaluation.   At the hospital, he received medical attention, his wounds were cleaned, and he was subsequently released.

10.     From the hospital, Mr. Collins was then transported to the downtown jail facility located at the Harrison County Courthouse.  The following morning his girlfriend was able to bond him out after he pleaded "not guilty" to all charges he was arraigned on by the on duty justice of the peace.  Oddly enough, when Mr. Collins was handed back his personal belongings and clothing, his clothing had been washed by the jail staff.  When asked why his clothes had been washed, the jail sergeant admitted to washing them due to the large amount of blood that had soiled them from Mr. Collins' injuries.  The sergeant went on to make it clear that Mr. Collins' injuries had not occurred at the downtown facility but at the annex where he was not in charge of jail operations and supervision.

11.     Approximately two weeks later, Deputy Dotson resigned his position from the

Harrison County Sheriff's Department amid allegations that an official investigation into whether Deputy Dotson had committed the crime of official oppression against the rights of Mr. Collins.  To the best of Plaintiff's knowledge, that investigation is still ongoing.

## V.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF – 42 U.S.C. §1983

12.     The allegations contained in Paragraphs 4 through 11of this Original Complaint are hereby incorporated and alleged for all purposes and incorporated herein with the same force and effect as if set forth verbatim.

13.     Defendant Dotson's exercise of the established policies and customs of the Harrison County Sheriff's Office violated the Plaintiff's clearly established rights under the United States Constitution to:

    a.  the right to due process by law;

    b.  freedom from unreasonable seizure of his person;

    c.  freedom from the use of unreasonable, unnecessary, and excessive force; and

    d.  the right to medical care without delay for injuries received while in custody.

14.     Defendant Dotson willfully, deliberately, maliciously, or acted with reckless disregard for Plaintiff's constitutional rights.

15.     **§1983**.  The Civil Rights Act of 1871, now codified as 42 U.S.C. §1983 as federal law provides: "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any laws privileges or immunities secured by the Constitution and laws, shall be

liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."  42 U.S.C. §1983.

16.     The state action requirement for standing under 42 U.S.C. §1983 has more commonly been referred to as "color of state law", from the statute itself.  Charles Collins is informed and believes and thereupon alleges that in committing said acts and/or omissions, the Defendant was the agent and employee of the Harrison County Sheriff's Office and was acting under color of state law.

17.     42 U .S.C. §1983 requires that the conduct complained of must have deprived the person of some privilege or immunity secured by the Constitution or laws of the United States. As such, Charles Collins alleges that Defendant deprived him of his Fourth Amendment rights and those rights, privileges, and immunities secured by the Fourth and Fifth Amendments to the Constitution incorporated and applied to the states through the Fourteenth Amendment. Defendant violated these provisions by the following actions and/or omissions, *inter alia:*

> a.  by using excessive force in the course of Defendant's attempted custody of Plaintiff, in violation of the Fourth Amendment and its "reasonableness" standard.  Plaintiff therefore pleads he was unlawfully beaten and harmed. Such actions resulted directly and only from the use of force clearly excessive to the need, and the excessiveness of which was objectively unreasonable;

> b.  by detaining Plaintiff in violation of his Fourth Amendment expectation of privacy and guarantee to security from unreasonable seizure without reasonable suspicion and/or probable cause;

> c.  by depriving Plaintiff of his liberty without due process of law in violation of his Fourteenth Amendment right;

> d.  by intentionally denying and/or delaying Plaintiff the access to medical care for injuries received while in custody in violation of his Fourteenth Amendment right to due process.

18.     The Defendant's actions and/or omissions were "objectively unreasonable" in light of the facts and circumstance confronting him without regard to his underlying intent or

motivation.   Clearly, careful attention to the facts and circumstances of this particular case demonstrates the unreasonableness of the Defendant's actions.   In light of the fact Charles Collins was already restrained prior to being brutally beaten and not resisting arrest by Defendant, it is initially absurd the Defendant would deem force was warranted and/or required. Mr. Collins was confined to a wheelchair to which his legs were strapped and his hands cuffed behind his back while Defendant Dotson savagely beat him repeatedly.   Mr. Collins never posed an immediate threat to the safety of Defendant Dotson.   Furthermore, Mr. Collins was not armed with any kind of weapon.   For these and other reasons, it was objectively unreasonable for Defendant Charles Dotson to beat savagely and brutally assault Charles Collins on the occasion described herein.

19.     **§1983 - Excessive Force.**   Plaintiff pleads that the Defendant used excessive force in the course of the deputy's supposed arrest and/or other "seizure" of a free citizen, such as Charles Collins, in violation of the Fourth Amendment and its reasonableness" standard. Plaintiff therefore pleads that Charles Collins was unlawfully assaulted, and physically beaten by Defendant Dotson.    Said actions resulted directly and only from the use of force clearly excessive to the need, and the excessiveness of which was objectively unreasonable.

20.     **§1983 - Search & Seizure.** The Fourth Amendment guarantees security from unreasonable search and seizure. It includes the expectation of privacy, the right to be free from detention, search and/or arrest without reasonable suspicion and/or probable cause to believe the seized person committed a crime.  Plaintiff further alleges Defendant Dotson violated the Fourth Amendment rights of Charles Collins when he was unreasonably, and unlawfully, detained. When a person, such as Mr. Collins, is seized and is not a "suspect" and is committing no crime, but is forced to undergo police escalation and brutality, the importance of the governmental

interests alleged to justify the intrusion is necessarily diminished.  As such, the actions and/or omissions of said deputy cannot be justified under the circumstances of the instant case.

21.      Likewise, Defendant Dotson is liable if he conducts the search or seizure in an abusive manner even if he has the lawful authority to conduct the search and/or seizure.  Charles Collins, in this situation, is protected by the Fourth Amendment of the United States Constitution, and Article I Section 9 of the Texas Constitution.  The right to security in person and property protected by the Fourth Amendment may be invaded in quite different ways by searches and seizures.  A search comprises the individual interest in privacy; a seizure deprives the individual of dominion over his or her person or property.  In this instance, the seizure of Charles Collins ran afoul of the Fourth Amendment because the seizure was conducted in an unnecessarily cruel and/or dangerous manner.

22.      **§1983 - Qualified Good Faith Immunity.**  Qualified good faith immunity stands for the proposition that even though the civil rights of a complainant may have been violated, if the officer engaged in the conduct in good faith, there is no liability for that individual.  The standard by which an officer's entitlement to good faith qualified immunity is objective not subjective.  The determination of objective reasonableness must be based on a version of the facts most favorable to the Plaintiff.  To the extent that credibility or fact questions exist, a fact-finder continues to be necessary.  In the instant case, Plaintiff alleges the Defendants is not entitled to claim "qualified good faith immunity."  Importantly, the Defendant never had a good faith belief in his conduct because he acted in a manner demonstrating he was plainly incompetent and knowingly violated the civil rights of Charles Collins.  When the pleadings (and/or facts) are taken in the light most favorable to the Plaintiff, it is clear Charles Collins was unlawfully assaulted and repeatedly beaten by Defendant Dotson after Mr. Collins had been

rendered defenseless with his hands cuffed behind his back while confined to a wheelchair to which his legs were bound.   Charles Collins never posed an immediate threat to the safety of Defendant Dotson.  Any reason given by Defendant Dotson for his unlawful actions does not warrant the application of qualified good faith immunity because neither the Defendant nor any persons in the vicinity were ever in any danger.  The savage beating of a defenseless detainee restrained in handcuffs and confined to a wheelchair is never reasonable.

### SECOND CLAIM FOR RELIEF — Texas Assault & Battery

23.     The allegations contained in Paragraphs 4 through 11 are herein incorporated by reference, the same as fully set forth verbatim for any and all purposes of this pleading.

24.     As a pendant state cause of action, at all times material and relevant herein, the Defendant, by acts and/or omissions and under color of state law did then and there by acts and/or omissions, intentionally, knowingly and/or recklessly cause severe personal injury to Charles Collins through unconsented physical contact with him,

25.     Under Texas law, the cause of action for excessive force is simply one for assault and battery.  Plaintiff alleges the Defendant committed an assault upon Charles Collins when he was intentionally, knowingly and/or recklessly beaten by Defendant Dotson after he had been restrained and rendered defenseless with his hands cuffed behind his back while confined to a wheelchair to which his legs were bound.  Said assaultive conduct of Defendant Dotson was committed intentionally, knowingly and/or recklessly, and was the proximate cause of the physical and emotional injuries suffered by Charles Collins.  Said injuries were the direct and immediate consequence of Defendant Dotson's wrongful acts and a natural and direct result of the assault resulting in the damages described herein.

26.     At no time was the Defendant privileged to take the action, as force was not

necessary.    Moreover, Defendant Dotson's assault of Charles Collins was not objectively reasonable when balancing the amount of force used against the need for such force.

### THIRD CLAIM FOR RELIEF — Intentional Infliction of Emotional Distress

27.    The allegations set forth in Paragraphs 4 through 11 are herein incorporated by reference, the same as if fully set forth verbatim for any and all purposes of this pleading.

28.    As a pendant state cause of action, at all times material and relevant herein, Defendant Dotson, by acts and/or omissions and under color of state law, intentionally and/or recklessly inflicted emotional duress upon Charles Collins, thereby he claims the tort of intentional infliction of emotional distress.   Mr. Collins alleges Defendant Dotson acted intentionally or recklessly when beating him, and further alleges such conduct was extreme and outrageous.  The actions of Defendant Dotson caused Charles Collins to suffer emotional distress and physical injuries, which were so severe Mr. Collins required treatment.   No reasonable person should be expected to endure such.

### VI.

### DAMAGES

29.    As a result of the foregoing unlawful and wrongful acts as described above, Plaintiff has suffered actual and consequential damages exceeding the minimum jurisdictional limits of this Court.

30.    As a direct and proximate result of Defendant's acts and omissions as heretofore alleged, Plaintiff suffered, and is seeking recovery of, general damages which include, but are not limited to, the following: physical and emotional personal injury, excruciating pain and suffering, grave emotional pain and mental distress; both past and future.

31.     Said injuries have caused Plaintiff to incur special damages, which include, but are not limited to, medical expenses associated with Plaintiff's physical and emotional personal injuries.  Plaintiff is therefore entitled to recover all reasonable and necessary medical expenses incurred, both past and future, resultant from the acts of Deputy Dotson.

32.     In addition, Deputy Dotson committed the foregoing acts with the kind of willfulness, wantonness, fraud and/or malice for which the law allows imposition of punitive damages against Defendant.  Punitive damages are designed to punish and/or deter persons such as the Defendant who engaged in egregious wrongdoing.  Punitive damages may be assessed under 42 U.S.C. §1983 when the conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.  Plaintiff is therefore entitled to exemplary damages in an amount exceeding the minimum jurisdictional limits of this Court.

## VII.

## <u>ATTONEY'S FEES</u>

33.     The Plaintiff has retained the undersigned attorney to represent him, and pursuant to 42 U.S.C. §1988(b)-(c) of the Federal Civil Rights Act, he is entitled to recover for his reasonable and necessary fees incurred for his attorney, and the reasonable and necessary expenses incurred in the pursuit of this claim at the trial level, the Court of Appeals level, if the case is appealed to that Court, and in the Supreme Court of the United States, if necessary.

## VIII.

## <u>JURY DEMAND</u>

34.     Plaintiff respectfully demands a trial by jury.

## IX.

## CONCLUSION

35.     Plaintiff specifically reserves his right to bring additional causes of action against

Defendant and to amend his Petition as necessary.

### X.

### PRAYER

36.     WHEREFORE, PREMISES CONSIDERED, Plaintiff prays the Court, upon final

trial of this cause, grant judgment in favor of the Plaintiff and against Defendant for:

A.   Actual and compensatory damages as determined at a trial on the merits;

B.   Mental anguish damages;

C.   Punitive damages in an amount to punish and/or deter, and to make an example
     of Defendant, in order to prevent similar future conduct;

D.   Costs of court;

E.   Reasonable and necessary Attorney's fees;

F.   Reasonable and necessary expert fees;

G.   Pre-judgment and post-judgment interest at the maximum rate allowed by law;

H.   Such other and further relief, general or special, at law or in equity, to which
     Plaintiff may be justly entitled.

Respectfully submitted,

By: *Josh B. Maness*

Josh B. Maness
State Bar No. 24046340
480 W. Texas Avenue
Waskom, Texas 75692
Tel. (903) 407-8455
Fax. (877) 320-5751
E-mail:  josh@joshmaness.com

Attorney for Plaintiff,
Charles Edward Collins